1  Ariel E. Stern, Esq.
2  Nevada Bar No. 8276
   Jacob Bundick, Esq.
3  Nevada Bar No. 9772
   AKERMAN SENTERFITT, LLP
4  400 South Fourth Street, Suite 450
   Las Vegas, NV 89101
5  Telephone:  (702) 634-5001
   Facsimile:  (702) 380-8572
6  E-mail:  ariel.stern@akerman.com
7  E-mail:  jacob.bundick@akerman.com

8  *Attorneys for Defendant MetLife Bank, N.A.*
   *(named as MetLife Home Loans, a division of*
9  *MetLife Bank, N.A.)*

10              UNITED STATES DISTRICT COURT
11                  DISTRICT OF NEVADA

12  JOHN and SHERALIN CARY,            Case No. 3:10-cv-00547-RCJ-RAM

13              Plaintiffs,
                                        **METLIFE'S MOTION TO DISMISS**
14  vs.

15  METLIFE HOME LOANS *et al.*,

16              Defendants.

17          Pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), Defendant MetLife Bank, N.A. (named as

18  MetLife Home Loans, a division of MetLife Bank, N.A.) ("MetLife"), hereby moves to dismiss

19  Plaintiffs' "Original Petition" ("Complaint") against it because the Complaint fails to state any

20  cognizable claims upon which relief could be granted, and fails to plead fraud with particularity.

21  This Motion is based on the following Memorandum of Points and Authorities.

22          Dated this 1st day of November, 2010.

23                                      AKERMAN SENTERFITT, LLP

24                                       /s/ Ariel E. Stern
                                        Ariel E. Stern, Esq.
25                                      Nevada Bar No. 8276
                                        Jacob D. Bundick, Esq.
26                                      Nevada Bar No. 9772
                                        400 South Fourth Street, Suite 450
27                                      Las Vegas, Nevada 89101

28                                      *Attorneys for Defendant MetLife Bank, N.A.*

{LV012301;1}

- 1 -

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      This is another lawsuit by borrowers seeking to challenge foreclosure of the property

3  securing their loan.  Other lawsuits making similar claims have been repeatedly rejected by

4  judges of this Court.  *See Goodwin v. Executive Trustee Services, LLC*, 680 F. Supp. 2d 1244 (D.

5  Nev. 2010); *Lopez v. Executive Trustee Services, LLC*, No. 3:09-CV-180-ECR-VPC, slip op. (D.

6  Nev. Jan. 13, 2010) (attached as Exhibit A);  *Green v. Countrywide Home Loans, Inc.*, No. 3:09-

7  cv-00374, slip op. (D. Nev. Jan. 11, 2010) (attached as Exhibit B).  The Complaint filed by

8  Plaintiffs John and Sheralin Cary ("Plaintiffs") is similarly defective, and it likewise should be

9  dismissed.

10      The Complaint should be dismissed because it fails to meet the basic pleading

11  requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.  The Complaint does not

12  contain a short and plain statement containing numbered paragraphs alleging the claims asserted

13  by the Plaintiffs and the relief requested.  Rather, it is a free-form narrative document, lacking

14  numbered paragraphs, and making numerous generalized allegations about the mortgage lending

15  industry as a whole.  Plaintiffs appear to be complaining about origination and foreclosure

16  concerns, but do not provide any specific factual averments explaining acts by MetLife that give

17  rise to cognizable claims for relief.  This Court has dismissed similar complaints in these

18  circumstances.  *Olson v. Palmer*, No. 3:10-cv-0249-RCJ-VPC, 2010 WL 3199938, at *4 (D. Nev.

19  Aug. 11, 2010) (Jones, J.) "[A] complaint must give fair notice and state the elements of the claim

20  plainly and succinctly . . . Plaintiff must allege with at least some degree of particularity overt

21  acts engaged in by defendants that support plaintiff's claim"); *Coward v. First Magnus Financial*

22  *Corp.*, No. 2:09-cv-01143-RCJ-GWF, 2009 WL 3367398, at *5 (D. Nev. 2009) (Jones, J.)

23  (complaint was "a generalized grievance about the mortgage industry" and did "not give

24  defendants notice about what causes of action to defend").  MetLife submits that it can and should

25  dismiss the Complaint here as well.

26  / / /

27  / / /

28  / / /

1   If the Court reviews Plaintiffs' causes of action (and it need not), it will discover the same

2   generic pleading problems, as well as other serious deficiencies that preclude Plaintiffs from

3   stating cognizable claims for relief.   The Complaint may therefore also be dismissed under Rules

4   12(b)(6) and 9(b).

5                                              **BACKGROUND**

6   Plaintiffs John & Sheralin Cary instituted this lawsuit against MetLife and UTLS Default

7   Services, LLC on September 8, 2010.  "Original Petition" (Sept. 8, 2010) ("Complaint").  The

8   Complaint contains a lengthy background section entitled "Statement of Cause", most of which

9   consists of lengthy allegations about problems in the real estate industry as a whole (Complaint at

10  pg. 2, line 32 – pg. line 152; pg. 16 line 431-page 18, line 508), or generic descriptions of various

11  laws and case law interpreting those laws (page 15, lines 398-428).[1]

12  It does appear that the lawsuit concerns a refinance loan Plaintiffs obtained secured by

13  property located at 5805 Ingleston Drive, Sparks, Nevada that Plaintiffs believe was "predatory,"

14  but the Complaint does not state the date the loan was obtained or provide any facts about the

15  origination of the loan.  *Id*. at pg. 1, lines 15-28.  Plaintiffs also appear to be concerned about

16  "collection practices" which they believe to be "frivolous," *id*. at pg. 2, lines 26-27, but again

17  Plaintiffs do not provide details of the specific practices about which they complain.

18  The Complaint contains a section captioned "Causes of Action."  Complaint pg 20, line

19  554-page 24, line 672.  There, Plaintiffs' Complaint asserts causes of action for breach of

20  fiduciary duty, negligence/negligence per se, fraud, breach of the implied covenant of good faith

21  and fair dealing, violation of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq*. ("TILA"), and

22  intentional infliction of emotional distress.

23  As relief, Plaintiffs seek to quiet title to the property; actual and punitive damages;

24  rescission of the loan; restitution; an emergency restraining order against foreclosure of the

25  property securing their loan; "a permanent injunction enjoining Defendants from engaging in the

26  fraudulent, deceptive, predatory and negligent acts and practices alleged" in the Complaint;

27  "disgorgement of all amounts wrongfully acquired by Defendants"; pre-judgment and post-

28

---

[1]   Because the Complaint has no numbered paragraphs, MetLife refers to its allegations by page and line numbers which Plaintiffs inserted on the left-hand side of each page.

1    judgment interest, and attorney's fees and costs.  *Id*. at pg. 24.

2            On September 22, 2010, Plaintiffs moved for a temporary restraining order.  Motion for

3    Temporary Restraining Order (Dkt. No. 5).  The Court denied that Motion on September 24,

4    2010, because Plaintiffs had "not established that they are likely to succeed on the merits of their

5    complaint."  Order (Dkt. No. 6) at 2.  On September 27, 2010, Plaintiffs filed an Amended

6    Motion for a Temporary Restraining Order (Dkt. No. 8).  The Court denied that Motion as well

7    the next day, again holding that Plaintiffs had "not established that they are likely to succeed on

8    the merits of their complaint."  Order (Dkt. No. 10) at 2.

9                                            **ARGUMENT**

10   **I.      THE COMPLAINT FAILS TO COMPLY WITH THE BASIC REQUIREMENTS
            OF FED. R. CIV. P. 8(A) AND 10(B).**

11

12           The Court should dismiss the Complaint because it fails to comply with basic pleading

13   requirements demanded of all litigants under the Federal Rules.[2]

14           Rule 8(a)(2) requires that Plaintiffs file a Complaint with a short and plain statement of

15   their claims showing that they are entitled to relief, in order to give MetLife fair notice of

16   Plaintiffs' claims and the grounds upon which those claims rest.  Fed. R. Civ. P. 8(a)(2); *Bell Atl.*

17   *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Specific identification of the parties to the

18   activities alleged by the plaintiffs is required to enable the defendant to plead intelligently."

19   *Kanady v. GMAC Mortgage, LLC*, No. CV F 10-1742 LJO DLB, 2010 WL 4010289, at *4 (E.D.

20   Cal. Oct. 13, 2010) (internal quotation and citation omitted).  Moreover, Plaintiffs' allegations

21   must consist of numbered paragraphs, and each allegation in a complaint must be "simple,

22   concise, and direct."  Fed. R. Civ. P. 10(b); 8(d)(1).

23           "Something labeled a complaint but written more as a press release, prolix in evidentiary

24   detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what

25   wrongs, fails to perform the essential functions of a complaint."  *McHenry v. Renne*, 84 F.3d

26   1172, 1180 (9th Cir. 1996).  Failure to comply with Rule 8 provides a basis for dismissal

27   _____

28   [2]      "While the court has an obligation to construe pro se pleadings liberally, pro se litigants must
     follow the same rules of procedures that govern other litigants."  *Guerra v. Just Mortgage Inc.*, No. 2:10-
     cv-00029-KJD-RJJ, 2010 WL 3307473, at *1 (D. Nev. Aug. 18, 2010).

{LV012301;1}

1   independent of Federal Rule of Civil Procedure 12(b)(6).  *McHenry*, 84 F.3d 1172, 1179-80 (9th

2   Cir. 1996); *Bukhari v. T.D. Servs. Co.*, No. 2:10-cv-000578-GMN-PAL, 2010 WL 2762794, at

3   *1 (D. Nev. July 13, 2010) ("a rambling or confusing diatribe is too much, and a court may in its

4   discretion dismiss such a complaint under Rule 8").

5          The Complaint fails to comply with these requirements.  It fails to state any specific facts

6   of actions by MetLife with respect to Plaintiffs' loan, let alone allegations sufficient to support

7   and state a claim for relief.  Rather than provide a short and plain statement containing numbered

8   paragraphs laying out their claims and the damages Plaintiffs allegedly suffered, the Complaint

9   consists largely of generalized attacks on the mortgage lending industry.  To take just one

10  example:

11          Prior to deregulation in the 1980's, lenders created loans for which they held and assumed
            the risk.  Consequently, Americans were engaged in safe and stable home mortgages.
12          With the protections removed, the unscrupulous lenders swooped in and, instead of
            making loans available to the poor, used the opportunity to convince the unsophisticated
13          American public to do something that he been traditionally taboo; home buyers were
            convinced to speculate with their homes, their most important investment . . .
14
            Another nail was driven in the American financial coffin when on the last day Congress
15          was in session in 2000 when restrictions that had been in place since the economic
            collapse of 1907 were removed.  Until 1907 investors were allowed to bet on stocks
16          without actually buying them.  This unbridled speculation led directly to an economic
            collapse.  As a result the legislature banned the practice, until the year 2000.  In 2000 the
17          unscrupulous lenders got their way on the last day of the congressional session.  Congress
            removed the restriction banning derivatives and again allowed the practice, this time
18          taking only 8 years to crash the stock market.  This practice allowed the lender to profit
            further from the loan by betting on the failure of the security instrument he had just sold to
19          the unwary investor, thus furthering the purpose of the lender to profit from both the
            borrower (consumer) and the investor.
20

21  Complaint at pg, 3, lines 55-60 & pg. 4, line 110-pg. 5, line 120 (emphasis in original).

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

{LV012301;1}

- 5 -

1    Although the Complaint purports (pp. 20-24) to set forth various causes of action, it does

2    so by generically asserting that "defendants" are liable, without specifying whether they are suing

3    MetLife, defendant UTLS Default Services, LLC, or both.[3]  In fact, MetLife is only mentioned

4    specifically <u>once</u> in the body of the Complaint – but even that reference is as part of a listing of

5    several lenders who Plaintiffs contend engaged in allegedly improper lending practices with

6    respect to "Americans" in general. Complaint at pg. 3, lines 61-63.

7    Plaintiffs have therefore failed to plead a complaint that meets elemental pleading

8    requirements, which apply to them even though they are proceeding <u>pro se</u>.  This Court has

9    frequently dismissed lawsuits in these circumstances.  *Olson*, 2010 WL 3199938, at *4

10   (dismissing claims because complaint did not contain a short and plain statement as required by

11   Rule 8(a)(2); "[A] complaint must give fair notice and state the elements of the claim plainly and

12   succinctly . . . Plaintiff must allege with at least some degree of particularity overt acts engaged in

13   by defendants that support plaintiff's claim"); *Coward*, 2009 WL 3367398, at *5 (dismissing

14   complaint which was "a generalized grievance about the mortgage industry" and did "not give

15   defendants notice about what causes of action to defend").  MetLife respectfully suggests that the

16   same result is required here, and the Complaint should be dismissed on this basis alone.  *See*

17   *McHenry*, 84 F.3d at 1179-80; *Kanady*, 2010 WL 4010289, at *4-5 (dismissing complaint for

18   failure to satisfy Rule 8 where complaint made "reference to various federal and California

19   statutes and legal theories but lack[ed] facts to support claims or valid, cognizable legal theories"

20   and "lack[ed] specific, clearly defined allegations as to [defendant] and generally attribute[d]

21   alleged wrongs to 'defendants.'"); *Bukhari*, 2010 WL 2762794, at *3 (dismissing complaint and

22   noting that Complaint was nothing more than a "lengthy generalized grievance against the

23   banking and mortgage industries" containing "arguments  . . . [that] have been seen in this Court

24   many times before and were likely compiled from various Internet sources").

25   [3]      *See, e.g.*, Complaint at pg. 20, lines 559-561 (listing breach of fiduciary duty as cause of action;
     "Defendants breached their duties to Petitioner by, *inter alia*, the conduct described above.  Such breaches
26   included, but were not limited to, ensuring their own and Petitioners' compliance with all applicable laws
     governing the loan transactions in which they were involved . . ."); pg. 23, lines 654-657 (listed intentional
27   infliction of emotional distress as cause of action; "The conduct committed by Defendants, driven as it was
     by profit at the expense of increasingly leveraged and vulnerable consumers who placed their faith and
28   trust in the superior knowledge and position of Defendants, was extreme and outrageous and not to be
     tolerated by civilized society.").

1   **II.     THE COMPLAINT FAILS TO STATE COGNIZABLE CLAIMS FOR RELIEF.**

2          This Court can dismiss the Complaint in light of the fundamental pleading deficiencies

3   outlined above, and need not examine the causes of action Plaintiffs have asserted.  If those

4   claims are reviewed, however, the Court will find the same problems which infect the Complaint

5   as a whole.  It can therefore dismiss the Complaint because Plaintiffs fail to state cognizable

6   claims for relief.

7          **A.     The Breach of Fiduciary Duty Cause Of Action Fails Because A Lender Owes
               No Fiduciary Duty To A Borrower Under Nevada Law.**
8

9          In a cause of action labeled "Breach of Fiduciary Duty," Plaintiffs allege that "Defendants

10  Agent, appraiser, trustee, Lender, et al, and each of them, owed Petitioner a fiduciary duty of care

11  with respect to the mortgage loan transactions and related title activities involving the Trust

12  Property."  Complaint at pg. 20, lines 556-558.  This claim is defective, and should be dismissed,

13  for the fundamental reason that it is non-specific:  it does not mention MetLife, lumps together

14  multiple unidentified defendants, and does not specify what role, if any, MetLife played in the

15  alleged conduct or whether Plaintiffs are even asserting the claim against MetLife.

16         The attempt to assert a breach of fiduciary duty is meritless as well, as it is settled law in

17  Nevada (and elsewhere) that a lender owes no fiduciary duty to borrowers.  *See*, *e.g.*, *Gomez v.*

18  *Countrywide Bank, FSB*, No. 2:09-cv-01489, 2009 WL 3617650, at *6 (D. Nev. Oct. 26, 2009)

19  ("A fiduciary duty exists in Nevada between doctor and patient and between attorney and client,

20  but not between lender and debtor.") (internal citations omitted); *Reed v. Countrywide Bank, FSB*,

21  No. 2:09-cv-00319, slip op. at 5-6 (D. Nev. Mar. 23, 2009) (attached hereto as Exhibit C)

22  (mortgage lender owes no fiduciary duty to borrower, and no "exceptional circumstances" exist in

23  such a situation to give rise to a "special relationship"); *Hoskins v. Countrywide Home Loans*, No.

24  2:09-cv-00166, slip op. at 2 (D. Nev. Mar. 18, 2009) (attached hereto as Exhibit D) (same); *Elias*

25  *v. HomeEQ Servicing*, No. 2:08-cv-1836, 2009 WL 481270, at *2 (D. Nev. Feb. 25, 2009) ("Loan

26  servicing companies do not have a special relationship as a fiduciary to a borrower."); *Yerrington*

27  *Ford, Inc. v. GMAC*, 359 F. Supp. 2d 1075, 1089 (D. Nev. 2004) (no fiduciary duty of a loan

28  servicer to a borrower), overruled on other grounds by *Giles v. GMAC*, 494 F.3d 865 (9th Cir.

1    2007).  Accordingly, the Court should dismiss the Breach of Fiduciary Duty cause of action.

2           **B.      The Negligence/Negligence Per Se Causes Of Action Fail To State Cognizable
                       Claims For Relief For Multiple Reasons.**
3

4           Plaintiffs also purport to state claims for Negligence and Negligence Per Se on the basis

5    that "Defendants owed a general duty of care with respect to Petitioners, particularly concerning

6    their duty to properly perform due diligence as to the loans and related transactional issues

7    described hereinabove."  Complaint at pg. 20, lines 568-570.  Plaintiffs fail to state cognizable

8    claims under either theory.

9           Under Nevada law, to state a claim for negligence a plaintiff must plead:  "(1) an existing

10   duty of care, (2) breach, (3) legal causation, and (4) damages."  *Turner v. Mandalay Sports*

11   *Entm't, LLC*, 180 P.3d 1172, 1175 (Nev. 2008).  Putting aside the fact that Plaintiffs again fail to

12   specifically tie MetLife to the claim they assert, the negligence claim fails because MetLife does

13   not owe Plaintiffs a duty of care.  MetLife, "[a] financial institution[,] does not owe a duty of care

14   to a borrower when the lender's involvement in the loan transaction does not exceed the scope of

15   its conventional role as a lender of money."  *Velasquez v. HSBC Mortgage Servs.*, No. 2:09-cv-

16   00784, 2009 WL 2338852, at *5 (D.Nev. July 24, 2009); *Robinson v. Ocwen Loan Servicing,*

17   *LLC*, No. 2:10-cv-321, 2010 WL 2834895, at *2 (D. Nev. July 16, 2010) ("Plaintiffs' actions for

18   negligence and negligent misrepresentation cannot succeed as there is no special duty of care

19   owed by financial institutions when the institution's involvement in a loan transaction does not

20   exceed the scope of a mere lender.").  Thus, the assertion that Defendants failed to "provide

21   proper disclosures concerning the terms and conditions of the loans they marketed, to refrain from

22   marketing loans they knew or should have known that borrowers could not afford or maintain,

23   and to avoid paying undue compensation such as 'yield spread premiums,'" seek to premise

24   liability on a supposed duty which the law does not recognize.  Plaintiffs' negligence claim

25   accordingly fails.

26          The negligence per se claim is defective as well.  Under Nevada law, to state a claim for

27   negligence per se a plaintiff must plead:  "(1) he or she belongs to a class of persons that a statute

28   was intended to protect; (2) defendant violated the relevant statute; (3) plaintiff's injuries are the

{LV012301;1}

1  type against which the statute was intended to protect; (4) the violation was the legal cause of

2  plaintiff's injury; and (5) plaintiff suffered damages." *Larson v. Homecomings Fin., LLC*, 680 F.

3  Supp. 2d 1230, 1236 (D. Nev. 2009).  As the basis for a negligence per se claim, Plaintiffs cite

4  various lending and disclosure statutes and regulations without alleging facts showing that they

5  were covered by the statutes and regulations, explaining how the statutes and regulations were

6  allegedly violated, or detailing the other required elements of a claim.   These defects mandate

7  dismissal.  *E.g.*, *Velasquez*, 2009 WL 2338852, at *6 ("Plaintiff's failure to identify specific

8  statutory violations is fatal to her negligence per se claim.").

9  10    **C.    The Fraud Cause Of Action Is Time-Barred And Fails To Comply With Rule 9(b).**

11  The Court should dismiss the Fraud Claim (Complaint at pg. 21, line 587 – pg. 22, line

12  607) for two reasons.

13  First, the Fraud Claim is time-barred.  Under Nevada law, a fraud claim accrues "upon the

14  discovery by the aggrieved party of the facts constituting the fraud" and the statute of limitations

15  for fraud is three years.  *See* NRS § 11.190(3)(d).  The fraud cause of action is premised upon

16  alleged conduct at the time Plaintiffs entered into their loan contract.  *See*, *e.g.*, Complaint at pg.

17  21, 598-600 ("Petitioner is informed and believes that Agent acted in concert and collusion with

18  others named herein in promulgating false representations to cause Petitioner to enter into the

19  LOAN without knowledge or understanding of the terms thereof.").  Plaintiffs obtained their loan

20  on November 16, 2004 (Deed of Trust, attached as Exhibit E hereto)[4] and had all the facts

21  constituting the alleged fraud on the day they entered into the loan agreement, where they agreed

22  to the terms described in the loan documents.  Plaintiffs did not bring this Complaint until

23  September 8, 2010, which is well outside the limitations period.  The fraud claim is untimely and

24  should be dismissed.  *See Brant v. Shea Mortgage, Inc.*, No. 2:10-CV-771 JCM (RJJ), 2010 WL

25  3154565, at *2 (D. Nev. Aug. 6, 2010) (dismissing fraud claims as time-barred; loan closed in

26  June 2006 and complaint not filed until April 2010 and "[a]ll wrongful acts alleged concern

27  statements made at or around the time plaintiffs entered into the loan transaction").

28

[4]    *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (court may consider documents to which the complaint "refers extensively" or "form[] the basis of the plaintiffs' claim").

The Court can independently dismiss the fraud cause of action because it fails to sufficiently allege facts required by Rule 9(b).  Claims of fraud may not be lightly made; Rule 9(b) requires that a plaintiff "specify the misrepresentations [and] explain in what way they were false."  *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984).  As this Court has made clear, fraud claims must allege "the who, what, when, where, and how of the misconduct charged."  *Goodwin*, 680 F. Supp. 2d at 1254 (*citing Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

The fraud cause of action makes none of the specific allegations required by the Rule.  It lumps together the defendants.  *E.g.*, Complaint at pg. 21 ("Agents made these representations with the intention of inducing Petitioner to act in reliance on these representations in the manner hereafter alleged, or with the expectation that Petitioner would so act.")  It also makes no specific allegations about the alleged fraud; it does not, for example, allege with specificity which employees of MetLife that Plaintiffs dealt with; detail when meetings or conversations took place; explain what statements were made by MetLife's employees; or provide specific facts indicating how Plaintiffs relied to their detriment.  Complaint at pp. 21-22.  Courts routinely dismiss these formulaic, threadbare assertions of fraud.  *See*, *e.g.*, *Goodwin*, 680 F. Supp. 2d at 1254 (dismissing Plaintiffs' fraudulent conspiracy claim because details of fraud were lacking); *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (Rule 9(b) requires plaintiff allege "the time, place, and specific content of the false representations as well as the parties to the representation"); *Gomez*, 2009 WL 3617650, at *5 (dismissing "entirely conclusory" fraud claim; "A cause of action for fraud does not lie for bad financial advice.  Defendants cannot be expected to have predicted the economic downturn, which is the real reason of Plaintiff's hardships.").

**D.     The Breach Of The Implied Covenant Of Good Faith And Fair Dealing Cause Of Action Fails To State A Cognizable Claim For Relief.**

Plaintiffs also allege a claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.  Complaint at pg. 22, line 610 - pg.23, line 644.  Leaving aside the fact that this claim again refers generally to "Defendants" without making any specific allegations as to MetLife,

1   dismissal is required because the Complaint does not come close to stating facts setting forth

2   cognizable claims.

3          First, a claim for breach of the contractual duty and good faith in fair dealing will lie only

4   when the Defendants "violated the terms" of an existing contract, or "prevented Plaintiff from

5   receiving a contractual benefit. *Chavez v. Cal. Reconveyance Co.*, No. 2:10-cv-00325, 2010 WL

6   2545006, at *3 (D. Nev. June 18, 2010). Here, Plaintiffs do not tie their alleged breaches to an

7   existing contract, and the majority of their allegations (*e.g.*, "[f]ailed to provide all of the proper

8   disclosures," [p]laced Petitioner into Petitioner's current loan product without regard for other

9   more affordable products," etc. (Complaint at pg. 22)) concern alleged conduct that took place

10  ***before*** Plaintiffs entered into their mortgage loan contract. "A claim for breach of the contractual

11  duty of good faith and fair dealing does not lie for such assertions concerning negotiation or

12  bargaining about potential contract terms or a new contract. " *Urbina v. Homeview Lending Inc.*,

13  681 F. Supp. 2d 1254, 1260 (D. Nev. 2009) ("A party cannot breach the covenant of good faith

14  and fair dealing before a contract is formed"); *Gomez*, 2009 WL 3617650, at *5 (dismissing claim

15  where plaintiff challenged actions that were "part of the bargaining process"); *Larson*, 680 F.

16  Supp. 2d at 1236-37 ("Because Plaintiffs' [breach of the covenant of good faith and fair dealing]

17  claim revolves entirely around alleged misrepresentations made before the contract was entered

18  into, it fails as a matter of law."). Plaintiffs allege no facts showing that MetLife violated the

19  terms of an existing contract, or prevented Plaintiffs from receiving a contractual benefit. As a

20  result, this claim must be dismissed for this reason alone.

21         Plaintiffs' claim for breach of the covenant of good faith and fair dealing also will not lie

22  because there is no special fiduciary relationship between the parties. *Brant*, 2010 WL 3154565,

23  at *1. Plaintiffs' allegation that a special relationship exists between an insurer and an insured is

24  irrelevant, as their lawsuit concerns a loan not an insurance policy, and Plaintiffs' allegation that

25  there is a special relationship between an agent of a lender and a borrower is simply wrong. As

26  set forth above, no such fiduciary relationship exists between a lender and a borrower. *See*

27  *Larson*, 680 F. Supp. 2d at 1235 ("Although Plaintiffs contend that a special relationship existed

28  because Defendants provided advice on various loan options and they trusted Defendants'

{LV012301;1}

1    superior knowledge, those circumstances amount to a typical lender/borrower relationship and,

2    therefore, do not amount to more than an arm's length transaction.").

3        E.    **The TILA Cause Of Action Is Time-Barred And Fails To State A Cognizable**
             **Claim For Relief.**

4

5        Plaintiffs' TILA claim (Complaint at pg. 23, line 647-52) meets the same fate.  As a

6    threshold issue, TILA causes of action must be brought "within one year from the date of the

7    occurrence of the violation."  15 U.S.C. § 1640(e).  Although Plaintiffs merely incorporate the

8    general allegations contained in the Complaint as the basis for their TILA claim, those allegations

9    essentially concern alleged acts or omissions that occurred at or before closing, and therefore the

10   statute of limitations started at the consummation of the transaction.  *King v. California*, 784 F.2d

11   910, 915 (9th Cir. 1986).  Accordingly, Plaintiffs' claims are untimely because they obtained their

12   loan on November 16, 2004, but did not commence this action until September 8, 2010.[5]

13       Further, Plaintiffs purport to bring a TILA cause of action without making any specific

14   allegations in support thereof.  They simply allege that they "incorporates by reference, re-pleads

15   and re-alleges each and every allegation contained in all of the paragraphs of the General

16   Allegations and Facts Common to All Causes of Action as thought the same were set forth

17   herein."  Complaint at pg. 23, line 647-649.  This vague statement not only fails to tie MetLife in

18   any way to this cause of action, but also does not state the specific provisions of TILA that were

19   allegedly violated and what conduct, if any, allegedly violated TILA.  The TILA cause of action

20   accordingly must be dismissed.  *See Ines v. Countrywide Home Loans, Inc.*, No. 08cv1267 WQH

21   (NLS), 2009 WL 690108, at *4 (S.D. Cal. Mar. 12, 2009) (dismissing TILA claim; complaint

22   failed to "allege with any specificity what false or inaccurate information was provided to

23   Plaintiff, or what information Defendants were required to disclose, but failed to disclose");

24

---

[5]    Plaintiffs make a cursory statement that "[t]he Limitations Period for Petitioners' Damages Claims
25   under TILA [] should be Equitably Tolled due to the DEFEDANTS' Misrepresentations and Failure to
     Disclose."  Complaint at pg. 14.  Plaintiffs do not allege any facts in support of this assertion.  *Aguilar v.*
26   *WMC Mortgage Corp.*, 2:09-cv-01416, 2010 WL 185951, at *4 (D. Nev. Jan. 15, 2010).  And, in any
     event, any alleged disclosure violations would have been apparent to Plaintiffs at closing because they
27   could readily compare the disclosures (or lack thereof) to the legal requirements for disclosures in statutes
     and regulations.  *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902-903 (9th Cir. 2003) (("The
28   [plaintiffs] were in full possession of all information relevant to the discovery of a TiLA [*sic*] violation . . .
     on the day the loan papers were signed.").  Thus, their claim for equitable tolling must be rejected.

{LV012301;1}

*Jurgens v. Nat'l City Mortgage Co.*, No. CV F 08-1021 LJO TAG, 2009 WL 530115, at *6 (E.D. Cal. Mar. 3, 2009) (same).[6]

**F. Plaintiffs Do Not State a Cognizable Intentional Infliction of Emotional Distress Claim.**

Finally, the claim for Intentional Infliction of Emotional Distress ("IIED") (Complaint at pg. 23, line 654-pg. 24, line 672) also should be dismissed. The Nevada Supreme Court has imposed a high threshold for IIED claims; they apply only to "extreme and outrageous conduct . . . which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) ("[P]ersons must necessarily be expected and required to be hardened . . . to occasional acts that are definitely inconsiderate and unkind."). Plaintiffs make no allegations meeting this demanding standard and allege no specific acts by MetLife which would be considered "outside all possible bounds of decency." The Court should dismiss the IIED claim, as other courts have done when confronted with similarly-vague allegations of emotional distress as a result of loan origination or loan foreclosure. *See Simon v. Bank of Am.*, No. 10-cv-00300-GMN-LRL, 2010 WL 2609436, at *12 (D. Nev. June 23, 2010) ("Foreclosure, particularly where there is no legally sufficient claim that it was wrongful, is insufficient to amount to an actionable claim" for emotional distress); *Goodwin*, 680 F. Supp. 2d at 1256 (alleged conduct of "misrepresentation of the loans at issue, negotiation of those loan and the closing of the loans" was not extreme and outrageous); *Lopez*, slip op. at 15-16 (same).

Plaintiffs also fail to allege any facts showing the remaining elements necessary to state a cognizable claim for IIED. There are simply no factual allegations in the Complaint showing that

[6] To the extent Plaintiffs seek to rescind their loan transaction (*see* Complaint at pg. 23, line 650-652 ("Defendant's violation of the provisions of law rendered the credit transaction null and void, invalidates Defendant's claimed interest in the Subject Property"), that request must be rejected because Plaintiffs have not alleged that they are financially able to tender the proceeds of their loan. *See* 15 U.S.C. § 1635(b); 12 C.F.R. § 226.23(d); *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003) ("a court may impose conditions on rescission that assures that the borrower meets her obligations once the creditor has performed its obligations"). Such an omission requires dismissal of Plaintiffs' claim. *See Farmer v. Countrywide Fin. Corp.*, No. SACV08-1075 AG (RNBx), 2009 WL 1530973, at *5 (C.D. Cal. May 18, 2009) (dismissing claim "[b]ecause Plaintiffs have not alleged that they have tendered or are financially capable of tendering the principal of their loan minus the appropriate interest and fees").

1    MetLife's conduct was intended to, or was done with reckless disregard for, causing emotional

2    distress; that Plaintiffs indeed suffered severe or extreme emotional distress; and that actual and

3    proximate causation exists between MetLife's alleged conduct and Plaintiffs' emotional distress.

4    *See Goodwin*, 680 F. Supp. 2d at 1255-56 (describing elements of IIED claim).  Plaintiffs' mere

5    recitation of these elements (Complaint at pg. 23) alleged as to all "defendants" is insufficient to

6    state a claim for IIED.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

7                                     **CONCLUSION**

8           For these reasons, Defendant MetLife Bank, N.A. (named as MetLife Home Loans, a

9    division of MetLife Bank, N.A.) respectfully requests that the Court grant this Motion and

10   dismiss all claims against it in Plaintiffs' Complaint with prejudice.

11          Dated this 1st day of November, 2010.

                                              AKERMAN SENTERFITT, LLP
12
                                               /s/ Ariel E. Stern
13                                            _____
                                              Ariel E. Stern, Esq.
14                                            Nevada Bar No. 8276
                                              Jacob D. Bundick, Esq.
15                                            Nevada Bar No. 9772
                                              400 South Fourth Street, Suite 450
16                                            Las Vegas, Nevada 89101

17                                            *Attorneys for Defendant MetLife Bank, N.A.*
                                              *(named as MetLife Home Loans, a division of*
18                                            *MetLife Bank, N.A.)*

19

20

21

22

23

24

25

26

27

28

{LV012301;1}

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 1st day of November, 2010 and FRCP 5(b), I served via CM/ECF and/or deposited for mailing in the U. S. Mail a true and correct copy of the foregoing **METLIFE'S MOTION TO DISMISS**, postage prepaid and addressed to:

JOHN CARY
SHERALIN CARY
5805 Ingleston Drive
Sparks, Nevada 89436

*Pro Se Plaintiffs*

ALEX J. FLANGAS, ESQ.
HOLLAND & HART, LLP
5441 Kietzke Lane, Suite 200
Reno, Nevada 89511

CHRISTINA S. BHIRUD, ESQ.
GREGG A. HUBLEY, ESQ.
PITE DUNCAN, LLP
701 E. Bridger Ave., Suite 700
Las Vegas, NV 89101

*Attorneys for Defendant*
*UTLS Default Services, LLC*

                                        /s/ Stacy Warner
                                        An employee of AKERMAN SENTERFITT LLP